UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH JACKSON, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>TIC- THE INDUSTRIAL COMPANY,<br><br>　　　　Defendant. | Case No.: 1:13-cv-02088 - AWI - JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br>(Doc. 8) |

TIC- The Industrial Company seeks to compel arbitration and stay this action filed by Joseph Jackson, Darrin Blackmon, Lashonda Brown, and Patrick Mitchell (collectively, "Plaintiffs"). (Doc. 8.) Plaintiffs filed their opposition to the motion on March 10, 2014 (Doc. 10), to which Defendant replied on March 17, 2014 (Doc. 11).

Defendant argues each Plaintiff signed their agreement to dispute any claims arising from the employment. Plaintiffs argue they were unaware that they signed arbitration agreements and that the agreement is substantively and procedurally unconscionable. For the following reasons, Defendant's motion to compel arbitration is **GRANTED**.

I.     **Relevant Factual and Procedural History**

Plaintiffs initiated this action by filing a complaint on October 10, 2013 in Kern County Superior Court, Case No. S-1500-CV-298484-SPC. (Doc. 1-1 at 3.) Plaintiffs allege they were subjected to "an egregious pattern of workplace racial harassment, discrimination, and retaliation" as

African-American employees of TIC. (*Id.* at 7 ¶ 25.) In addition, Plaintiffs Joseph Jackson and Darrin Blackmon assert they "experienced harassment on account of their age" while employed at TIC. (*Id.* at 8, ¶ 27.) Plaintiffs allege they "regularly complained . . . to their supervisors and to TIC's human resources department," but "TIC's management took no meaningful action to end th[e] culture of workplace harassment." (*Id.*, ¶¶ 30-31.) Plaintiffs allege that "TIC failed to take reasonable steps to prevent the harassment and discrimination and negligently retained and supervised employees who perpetuated the harassment and discrimination," and "[i]nstead, TIC singled-out and retaliated against each Plaintiff for speaking up." (*Id.*, ¶ 32.) According to Plaintiffs, they were each wrongfully terminated from their positions at TIC. (*Id.* at 8-9, ¶¶ 32-36.) Further, Plaintiffs allege "TIC repeatedly forced Plaintiffs Joseph Jackson and Darrin Blackmon to work ten (10) hour workdays or sixty (60) hour workweeks without receiving overtime compensation" and "deprived them of mandated meal and rest break periods." (*Id.* at 9-10, ¶ 37.)

Based upon these allegations, Plaintiffs assert the following causes: (1) racial harassment in violation of Cal. Gov't Code §12940(j)(1); racial discrimination in violation of Cal. Gov't Code § 12940(a); (3) age-based harassment in violation of Cal. Gov't Code § 12940(j)(1); (4) discrimination in violation of Cal. Gov't Code § 12940(a); (5) failure to accommodate medical condition and/or physical disability in violation of Cal. Gov't Code § 12940(m); (6) wrongful termination in violation of public policy; (7) negligent supervision, hiring, and retention; (8) failure to take reasonable steps to prevent harassment, discrimination, and retaliation in violation of Cal. Gov't Code § 12940(j)(1) and (k); (9) retaliation in violation of Cal. Gov't Code § 12940 *et seq.*; (10) intentional infliction of emotional distress; (11) unpaid and missed meal breaks in violation of Cal. Labor Code §§ 226.7(a) and 512(a); (12) unpaid and missed rest breaks in violation of Cal. Labor Code § 226.7(a) and IWC Wage Order 1-2001; (13) unpaid overtime compensation in violation of Cal. Labor Code §§ 510 and 1198; (14) improper wage statements in violation of Cal. Labor Code §§ 226(a); (15) civil penalties for failure to provide meal breaks pursuant to Cal. Labor Code § 2699; (16) civil penalties for failure to provide rest breaks pursuant to Cal. Labor Code § 2699; (17) civil penalties for unpaid overtime compensation pursuant to Cal. Labor Code § 2699; (18) civil penalties for improper wage statements pursuant to Cal. Labor Code § 2699; and (19) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200.

(*See generally* Doc. 1-1 at 10-28.)

On December 23, 2013, TIC filed its Answer to the complaint, including in its affirmative defenses that Plaintiffs' claims were "subject to binding arbitration." (Doc. 1-1 at 115.) In addition, TIC filed a Notice of Removal, thereby initiating the matter in this Court. (Doc. 1.) Asserting the initiation of this lawsuit constitutes a breach of the plaintiffs' agreements to arbitrate claims related to their employment, TIC filed its motion to compel arbitration pursuant to the Federal Arbitration Act on February 20, 2014. (Doc. 8)

## II.     Legal Standard

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The Court's role in applying the FAA is "limited to determining whether a valid agreement to arbitrate exists and, if so, whether the agreement encompasses the dispute as issue." *Lifescan, Inc. v. Premier Diabetic Servs.*, 363 F.3d 1010, 1012 (9th Cir. 2004). To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960). Because the FAA "is phased in mandatory terms," "the standard for demonstrating arbitrability is not a high one [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As a result, arbitration should only be denied when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). It is well-established that "arbitration

provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation."
*Lifescan*, 363 F.3d at 1011.

### III.    The Arbitration Agreement and Terms

Each of the plaintiffs completed the "Application for Employment" for TIC. (*See* Doc. 8-3 at 3-32.) The two-page document contained the following arbitration provision:

> TIC's arbitration policy applies to claims by the employees as well as claims by the employer. The policy provides as follows: Except for certain exceptions described below, all *claims* seeking damages (including punitive damages), injunctive relief, reinstatement and/or any other legal or equitable form of relief *arising out of or in any way related to your employment* are all subject to final and binding arbitration in accordance with the most current Rules of the American Arbitration Association for the Resolution of Employment Disputes.
>
> "*Claims*", as used herein, includes but is not limited to, disputes, claims and/or causes of action alleging personal injury or damage to property, discrimination, sexual harassment, failure to hire or to promote, wrongful termination, breach of contract (actual or implied), tortious interference with contract or with business relations, infliction of emotional distress (intentional or negligent), and/or any other claim or cause of action arising in contract and/or tort.
>
> "*Arising out of or in any way related to your employment*" as used herein, includes but is not limited to (a) *claims* against TIC, TIC's parent, sister or subsidiary corporations and any affiliates, partners, or joint venturers of TIC; (b) *claims* against any person, company or entity (or any of their property) for whom or with whom TIC has done or may be doing work at any time during your employment; (c) *claims* against any person, company or entity to whom TIC owes any duty of indemnity. This policy does not and is not intended to prevent you from filing claims for workers' compensation or unemployment compensation, nor is it intended to prevent you from filing charges or complaints with the National Labor Relations Board, the federal Equal Employment Opportunity Commission, the federal Occupation Safety & Health Administration, or other federal, state, or local agencies having similar responsibilities. Nothing in this policy shall be interpreted in a manner that limits your rights under the National Labor Relations Act.
>
> Invalidity or unenforceability of one or more provisions of this Arbitration Section shall not affect any other provision of this Arbitration Section. Acceptance of the terms and conditions of this Arbitration policy is an express condition precedent to your employment with TIC.

(Doc. 8-3 at 4, emphasis in original.) In addition, the Application for Employment contained an "Acknowledgement" provision immediately above the signature line, which stated:

> I ACKNOWLEDGE THAT I HAVE READ AND FULLY UNDERSTAND THE SECTIONS OF THIS APPLICATION ENTITLED "ARBITRATION" AND "NOTICE TO APPLICANTS" AND I FURTHER UNDERSTAND THAT, IF EMPLOYED BY TIC, MY EMPLOYMENT AND ANY POST-EMPLOYMENT MATTERS RELATING TO, OR ARISING OUT OF MY EMPLOYMENT WILL BE SUBJECT TO THE CONDITIONS STATED THEREIN AND THAT THOSE CONDITIONS ARE EXPRESS CONDITIONS PRECEDENT TO MY EMPLOYMENT.

(*Id.*)  Each Plaintiff signed the application form which contained the above provisions.  (Sullivan Decl., Exhs. A-J.)  Further, each signed an acknowledgement of reading the jobsite policies, affirming "[t]hat he/she has read the arbitration requirements detailed in both the foregoing jobsite policies and his/her employment application and agrees to be bound by those requirements both during his/her employment with TIC and at all times thereafter."  (Sullivan Decl., Exhs. L-M, U-AA, CC.)

**IV.    Discussion and Analysis**

      **A.    Validity of the arbitration agreement**

When evaluating whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002).  An agreement to arbitrate may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility v. Concepcion*, 131 S.Ct. 1740, 1746 (2011).  Here, Defendant asserts that if California law is applied, the arbitration provision is valid and enforceable.  (Doc. 8-1 at 20-24.)  On the other hand, Plaintiffs argue the provision is procedurally and substantively unconscionable under California law.  (Doc. 10 at 5-10.)

A viable contract under California law requires "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal.App.2d 191, 196 (1966)).   Here, there is no question that the parties were capable of contracting and consented to arbitration of disputes arising from or relating to their employment at TIC.  Further, there can be no dispute that the arbitration agreement was supported by sufficient consideration.  *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (a promise to be bound by the arbitration process itself serves as adequate consideration); *see also Strotz v. Dean Witter Reynolds*, 223 Cal.App.3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other").

An arbitration agreement may only be invalidated for the same reasons as other contracts. Cal. Code Civ. Proc. § 1281; *see also Armendariz v. Found. Health Psychcare Serv., Inc.*, 24 Cal.4th 83, 99 (2000). Thus, a contract "is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)). Procedural unconscionability focuses on "oppression and surprise," while substantive unconscionability focuses upon "overly harsh or one-sided results." *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1532 (1997) (citations omitted). Both forms of unconscionability must be present in order for a court to find a contract unenforceable, but it is not necessary that they be present in the same degree. *Davis*, 485 F.3d at 1072; *Stirlen*, 51 Cal. App.4th at 1532. Consequently, "[c]ourts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz*, 24 Cal.4th at 99).

Under California law, Plaintiffs bear the burden of establishing the arbitration agreement is unconscionable by a preponderance of the evidence. *Engalla v. Permanente Med. Group, Inc*., 15 Cal.4th 951, 972 (1997) (the party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense"). A party asserting unconscionability must demonstrate both procedural and substantive unconscionability at the time the contract was made. *Am. Software, Inc. v. Ali*, 46 Cal.App.4th 1386, 1390 (1996).

        1.     Procedural Unconscionability

The threshold issue in for procedural unconscionability "is whether the subject arbitration clause is part of a contract of adhesion." *Stirlen*, 51 Cal.App.4th at 1532; *see also Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001). A contract of adhesion "is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 817 (1981). Accordingly, the Court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Services*, 70 Cal.App.4th 1322, 1327 (1999). Specifically, the Court questions whether the contract was

"imposed on employees as a condition of employment." *Soltani*, 258 F.3d at 1042.

Agreeing to arbitrate any claims related to employment was "an express condition precedent to… employment with TIC." (*See, e.g.,* Doc. 8-3 at 4.) In general, under California law, it is "procedurally unconscionable to require employees, as a condition of employment, to waive their right to seek redress of grievance in a judicial forum." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *see, e.g., Armendariz*, 24 Cal.4th at 114-115 (explaining an arbitration agreement was procedurally unconscionable because it was imposed on employees as a condition of employment, and there was no opportunity for them to negotiate); *Aral v. Earthlink, Inc.*, 134 Cal.App.4th 544, 557 (2005) (an arbitration clause offered on a "take it or leave it" basis demonstrates "quintessential procedural unconscionability"); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853 (2001) ("finding of a contract of adhesion is essentially a finding of procedural unconscionability"). Even *Roman v. Superior Court*, 172 Cal.App.4th 1462, 1471 (2009)—cited by TIC in its reply—holds that the arbitration agreement contained in the employer's "take-it-or-leave-it" contract was adhesive and was procedurally unconscionable, though the *Roman* court found limited procedural unfairness based upon the placement of the agreement in the employment contract and the heading which called notice to it.

In any event, because the agreement to arbitrate was clearly identified as a condition of employment with TIC, the Court finds this evidence of procedural unconscionability. *See Armendariz*, 24 Cal.4th at 114-115; *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107 (2004) (finding an arbitration agreement procedurally unconscionable because it was a prerequisite of employment and the employee did not have an "opportunity to negotiate or refuse to sign the arbitration agreement").

Importantly, however, a finding that the term was a contract of adhesion "only indicates that the agreement is somewhat procedurally unconscionable, not that it is unenforceable." *Naria v. Trover*, 2013 U.S. Dist. LEXIS 120415 at *6-7, 2013 WL 4516483 at *3 (N.D. Cal. Aug. 23, 2013) (citing *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010)). Procedural unconscionability focuses on *both* oppression and surprise. *Kilgore v. KeyBank, Nat'l. Assoc.*, 718 F.3d 1052, 1059 (9th Cir. 2013) (citing *Harper v. Ultimo*, 7 Cal.App.4th 1402, 1406 (2003)).

The arbitration provision was clearly labeled as such and set apart from other sections in Plaintiffs' applications for employment.  It appeared immediately below a portion of the document that applicants were required to complete, and on the same page as a signature line requiring an acknowledgement of the arbitration provision. (*See, e.g.*, Doc. 8-3 at 10.)  Faced with similar facts—where a provision was "not buried in fine print…, but was instead in its own section, clearly labeled"—the Ninth Circuit determined there was no surprise to the plaintiff of the provision. *Kilgore*, 718 F.3d at 1059.

Although Plaintiffs argue they did not have time to read the arbitration provision in their applications for employment, this does not render the arbitration provision unenforceable.  When a party signs a document agreeing that he/she has read the arbitration agreement, the burden shifts to them to demonstrate they did not agree to arbitrate. *Reilly v. WM Financial Servs., Inc.*, 95 F.App'x 851, 852-53 (9th Cir. 2004).   The mere fact that Plaintiffs claim they failed to read the arbitration agreement is not sufficient. *Bolanos v. Khalatian*, 231 Cal.App.3d 1586 (1991).  Both federal courts and California state courts have enforced incorporated arbitration agreements in such circumstances. See, e.g., *Reilly*, 95 F.App'x at 852-53 (affirming district court's ruling that arbitration agreement was enforceable even though the plaintiffs claimed they never saw, read or understood the arbitration agreement); *Izzi v. Mesquite Country Club*, 186 Cal.App.3d 1309, 1318 (1986)  (explaining it is a "general rule… that one who assents to a contract cannot avoid its terms on the ground he failed to read it before signing it").  Here, Plaintiffs received the arbitration agreement in conjunction with their applications for employment, as well as in TIC's "Jobsite and Drug and Alcohol Policies" document.  It is noteworthy also that each Plaintiff applied to and worked for TIC more than once and each time signed the application form with the above provisions and at least one time, but in some cases many times, signed the acknowledgment on the policies document indicating he/she had read the arbitration terms contained in the policies document and in the application and agreed to arbitrate claims related to the employment.  (Doc. 8-2 at 2-8)  Given these circumstances, the suggestion that Plaintiffs were deprived by TIC of the ability to review or understand the arbitration agreement every single time they

1 agreed to be bound by the arbitration agreement, is hard to accept.[1]

2 Plaintiffs also argue that the incorporation of the AAA's rules is a procedural defect because
3 they were required "to make an independent inquiry to find the rules in order to fully understand" the
4 terms. (Doc. 10 at 7, quoting *Zullo v. Superior Court*, 197 Cal.App.4th 477, 485-86 (2011)). Notably,
5 the Court may reform arbitration agreements that designate non-existent arbitration rules. *See, e.g.,*
6 *HZI Research Ctr., Inc. v. Sun Instruments Japan Co.*, 1995 U.S. Dist. LEXIS 13707, 1995 WL 562181
7 (S.D.N.Y. Sept. 20, 1995) ("If the parties imperfectly or incorrectly designate the instrumentality
8 through which arbitration should be effected, the court will enforce the contract by making an
9 appropriate designation"); *Sankey v. Sears, Roebuck & Co.*, 100 F.Supp.2d 1290, 1297-98 (Ala. 2000)).
10 Consequently, this Court has determined that failure to provide arbitration rules where the AAA Rules
11 are incorporated into the agreement is not sufficient, itself, to establish procedural unconscionability.
12 *Medlin Ins. Agency v. QBE Ins. Corp.*, 2012 WL 2499952, at *5 (E.D. Cal. June 27, 2012). Likewise,
13 the Northern District determined that "matters like the AAA rules can be incorporated into a contract
14 by reference provided the incorporation is clear and the incorporated rules are readily available."
15 *Ulbrich v. Overstock.Com, Inc.,* 887 F.Supp. 2d 924, 932-33(N.D. Cal. 2012) (citing *Williams Const.*
16 *Co. v. Standard-Pacific Corp.,* 254 Cal.App.2d 442, 454 (1967)).

17 Plaintiffs argue that identification of the specific AAA Rules cannot be determined because the
18 Rules set forth different provisions for "Employer-Promulgated Plans," for "Individually-Negotiated
19 Employment Agreements and Contracts," and for "Supplementary Rules for Class Action Arbitration."
20 (Doc. 10 at 10) Exactly where the ambiguity exists, however, is not explained by Plaintiffs. Clearly,
21 this matter is not a class action case so there can be no true argument that confusion exists in this
22 regard. Moreover, neither side argues that the arbitration agreement was negotiated individually and,
23 instead, the policy document and the employment application—where the arbitration agreement is
24 found—are undisputedly a uniform policy adopted by TIC. Moreover, the agreement specifies that the
25 rules applicable are those which apply to resolution of employment disputes. As a result, the Court
26 finds no lack of clarity as to which AAA Rules apply.

---

28 [1] Likewise, absent a showing of the invariable procedure employed by TIC every time one of the Plaintiffs applied to work for TIC, the fact that each Plaintiff's declaration is identical to the other Plaintiffs' declarations, undercuts their credibility.

Thus, incorporation of the AAA rules does not mandate a finding that TIC's arbitration provision is procedurally and substantively unconscionable. Consequently, although the arbitration provision was oppressive because it was imposed as a condition of Plaintiffs' employment, there was no surprise to the plaintiffs. Thus, the Court finds the agreement was procedurally unconscionable only to a moderate degree.

### 2. Substantive Unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (Ct. App. 2002). While "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope," substantive unconscionability "limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting the forum for itself." *Ting*, 319 F.3d at 1149 (quoting *Armendariz*, 24 Cal. 4th at 118). Thus, the focus of the Court's inquiry is whether an agreement is one-sided and will have an overly harsh effect on the party not given an opportunity to negotiate its terms. *Flores*, 93 Cal. App. 4th at 854.

The Ninth Circuit instructs courts applying California law to arbitration agreements "look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting*, 319 F.3d at 1149; *see, e.g., Ingle*, 328 F.3d at 1180 (finding an arbitration agreement substantively unconscionable upon review of the agreement's provisions, including claims subject to arbitration, its statute of limitations, class actions, fee and cost-splitting arrangements, remedies available, and termination/modification of the agreement). Here, the arbitration provision incorporates the current rules of the "American Arbitration Association for the Resolution of Employment Disputes."[2] (Doc. 8-3 at 4.) Plaintiffs argue this renders TIC's arbitration provision substantively unconscionable because it "restricts Plaintiffs' right to discovery" and imposes the burden "on Plaintiffs to pay the arbitration fees and costs." (Doc. 10 at 9-10.)

///

---

[2] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). Accordingly, the Court takes judicial notice of the American Arbitration Association's "Employment Arbitration Rules and Mediation Procedures," available at http:///www.adr.org/aaa (last visited March 20, 2014).

*a.     Claims subject to arbitration*

An arbitration agreement that "compels arbitration of the claims employees are most likely to bring against [the employer] but exempts from arbitration the claims [the employer] is most likely to bring against its employees" is substantively unconscionable. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 785 (2002) (quoting *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 175-76 (2002). For example, in *Ferguson* and *Mercuro*, which both involved the arbitration agreement of Countrywide Credit Industries, the courts found the company's arbitration agreement was substantively unconscionable, because it excluded claims "for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information." *Ferguson*, 298 F.3d at 785; *Mercuro*, 96 Cal.App.4th at 176.

Here, TIC has not excluded claims it may bring against an employee from the arbitration agreement. Accordingly, the claims subject to arbitration do not appear substantively unconscionable. *See Ferguson*, 298 F.3d at 784, n.6 (explaining substantive unconscionability may be demonstrated when an employer seeks to enforce "what is essentially a unilateral arbitration agreement" because the company excludes claims it may bring against the employee from the agreement).

*b.     Fees and cost arrangement*

When arbitration is a condition of employment, an employer "cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear . . . in court." *Armendariz*, 24 Cal.4th at 110 (emphasis in original). A scheme that makes each party bear half the costs of the arbitration "alone would render an arbitration agreement unenforceable." *Circuit City v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002). For example, the Ninth Circuit found a cost-splitting provision substantively unconscionable that provided "each party shall pay one-half of the costs of arbitration following the issuance of the arbitration award." *Ingle* , 328 F.3d at 1177-78.

Plaintiffs assert that "[t]he AAA Rules themselves say nothing explicitly about the exact amount of fees; instead, employees, like Plaintiffs, are left to their own devices to figure out what their payment obligations would be if they are forced to fight their dispute in a forum to which they never agreed." (Doc. 10 at 10.) However, contrary to Plaintiffs' assertion, the AAA rules are *not* "silent as to who pays what." The AAA Employment Arbitration Rules and Mediation Procedures require in cases

filed by an employee against the employer, "a non-refundable filing fee capped in the amount of $200 is payable in full by the employee when the claim is filed… [and] [a] non-refundable fee in the amount of $1350 is payable in full by the employer, unless the plan provides that the employer pay more." AAA Rule 48(i).[3] Further, AAA requires the employer pay the arbitrator's compensation and expenses, "unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation." AAA Rule 48. Also, the employer pays the daily administrative fee, the hearing room fee and the arbitrator's travel fees. *Id*. By requiring employees to pay only a portion of the filing fee—the majority of which is borne by the employer and in amount substantially lower than the Court's own filing fee—and their costs associated with the presentation of their witnesses (AAA Rule 45), the AAA Rules do not require Plaintiffs to incur any type of costs they would otherwise avoid in court.[4]

### c. Statute of limitations

If a statute of limitations is set forth in arbitration agreement, "[t]he critical question is whether 'the period fixed is so unreasonable so as to show imposition or undue advantage in some way.'" *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1028 (N.D. Cal. 2009) (quoting *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003). Generally, provisions strictly requiring employees to bring all claims within one year are unconscionable. *Adams*, 279 F.3d at 894-95. Here, the arbitration provision does not impose a shortened statute of limitations upon the parties, and there is no imposition or undue advantage.

### d. Remedies

Remedy provisions that "fail[] to provide for all the types of relief that would otherwise be available in court" by limiting an employee's total and punitive damages are substantively unconscionable. *Adams*, 279 F.3d at 895 (citing *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482 (9th Cir. 1997)). TIC's provision allows for punitive damages, "injunctive relief, reinstatement and/or

---

[3] Though Plaintiffs do not claim that the identification of the applicable version of the AAA Rules is problematic, the Court notes that the arbitration agreement is vague in that it fails to indicate the most current version of the rules at the time the agreement is signed or at the time the claim is filed would be used. However, the Court has reviewed the two sets of Rules in effect as to employment disputes from July 1, 2006 to the present and finds few substantive differences between the two. For example, the fees imposed in the prior version (effective July 1, 2006) of the Rules required the employee to pay $150 if he/she filed the claim and the employer to pay $900. However, the amount and extent of discovery permitted is unchanged.
[4] If the employer files the case, the filing fees are borne by the employer. AAA Rule 48(i).

any other legal or equitable form of relief." (*See* Doc. 8-3 at 4.) Therefore, the relief provided does not improperly limit available remedies, and the provision is not substantively unconscionable.

### e. Modification and termination of the terms

When terms of an arbitration agreement permit an employer to unilaterally amend or terminate the agreement, even with written notice to employees, the provision is substantively unconscionable. *See, e.g., Ingle*, 328 F.3d at 1179; *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F.Supp. 2d 1008, 1021-22 (E.D. Cal. 2008). The Ninth Circuit explained a provision granting an employer unilateral power to amend or terminate an arbitration agreement, even with written notice to employees, proscribes an employee's ability negotiate and "embeds its adhesiveness." *Ingle*, 328 F.3d at 1179. Here, however, TIC did not retain the right of unilateral modification or termination of the arbitration provision. Indeed, though TIC retained the right to change its policies and procedures, it expressly excluded from this ability as to the arbitration agreement. The policy notes, "except that the policies and procedures contained herein regarding arbitration shall not be modified revoked, suspended, terminated or changed unless you consent to such modification, revocation, suspension, termination or change by signing a new jobsite policies document or other document contained revised arbitration policies and procedures." (Doc. 8-3 at 33, 42, 48, 54, 60, 78)

### f. Discovery

Plaintiffs observe that "AAA Rule 9 empowers the arbitrator to limit discovery to only that which the arbitrator "'considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.'" (Doc. 10 at 9, quoting AAA Rule 9.) According to Plaintiffs, "discovery at the discretion of an arbitrator differs substantially from a litigant's broad discovery rights in federal or state court." (*Id.*) Further, Plaintiffs argue that they "do not even know to what discovery, if any, they would be entitled if this matter is compelled to arbitration," and this renders TIC's arbitration provision substantively unconscionable.[5] (*Id.*, citing, *e.g., Armendariz*, 24 Cal.4th 83 at 122; *Sparks v. Vista Del Mar Child & Fam. Servs.*, 207 Cal.App.4th 1511, 1523 (2012);

---

[5] This, however, is not unlike discovery in federal court where the court is entitled to "alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30 . . . the court may also limit the number of requests under Rule 36." Fed. R. civ. P. 26(b)(2).

*Fitz v. NCR Corp.,* 118 Cal.App.4th 702, 722-23 (2004)).

Notably, California law requires only that an arbitration agreement "must provide for *adequate discovery.*" *Armendariz*, 24 Cal. 4th 83 at 122. In *Armendariz*, the court observed that parties are "permitted to agree to something less than the full panoply of discovery provided in Code of Civil Procedure section 1283.05." *Id.* at 106. Despite Plaintiffs' concerns, there is no reason to believe an arbitrator will act unreasonably or unlawfully related to their discovery efforts. Indeed, AAA Rule 9 authorizes the arbitrator to order depositions, interrogatories, and document production as considered necessary. Accordingly, its discovery terms are not substantively unconscionable.

          g.        *Agreement as a whole*

California law provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). Refusing to enforce an arbitration agreement is appropriate "only when an agreement is permeated by unconscionability." *Armendariz*, 24 Cal.4th 83 at 122 (internal quotation marks omitted). Courts often look to whether the offending provisions "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.* at 124; *see also Ferguson*, 298 F.3d at 787-88. For example, the Ninth Circuit found an arbitration agreement was "permeated by unconscionable clauses" where there was a "lack of mutuality regarding the type of claims that must be arbitrated, the fee provision, and the discovery provision." *Ferguson*, 298 F.3d at 788.

Significantly, TIC's agreement incorporates the AAA Rules, which courts have regarded as "neutral and fair." *See, e.g., Izzi v. Mesquite Country Club,* 186 Cal.App.3d at 1318 ("The Rules of the American Arbitration Association specified by the clause as governing the resolution of disputes are generally regarded to be neutral and fair. In other words, even if defendants did have bargaining power superior to that of plaintiffs, the application of the arbitration clause to this dispute does not engender any unjust advantage to defendants.") Taken as a whole, its provisions do not appear substantively unconscionable.

### 3. Conclusion

Because the agreement was only moderately substantively unconscionable and not procedurally unconscionable (*Armendariz*, 24 Cal.4th at 99), the arbitration agreement is enforceable.

### B. The arbitration agreement encompasses the disputes at issue.

To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960).

The arbitration agreement specifies that its provisions govern "all *claims* seeking damages (including punitive damages), injunctive relief, reinstatement and/or any other legal or equitable form of relief *arising out of or in any way related to your employment.*" (Doc. 8-3 at 4, emphasis in original.) Further, "claims" are defined as "disputes, claims and/or causes of action alleging personal injury or damage to property, discrimination, sexual harassment, failure to hire or to promote, wrongful termination, breach of contract (actual or implied), tortious interference with contract or with business relations, infliction of emotional distress (intentional or negligent), and/or any other claim or cause of action arising in contract and/or tort." (*Id.*) Based upon these broad specifications it is clear the issues at dispute—including age and racial discrimination, violations of California labor law, and wrongful termination—are encompassed within the arbitration agreement.

## V. Conclusion and Order

Plaintiffs and Defendant entered into a valid arbitration agreement, which encompasses the issues in dispute. Plaintiffs have failed to carry their burden to demonstrate the agreement is both procedurally and substantively unconscionable. As a result, "there is a presumption of arbitrability" and motion to compel arbitration should not be denied. *See AT&T Tech., Inc.*, 475 U.S. at 650.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' motion to compel arbitration is **GRANTED**;

2. The matter is **STAYED**[6] to allow the completion of the arbitration; and

3. Every 120 days **and** no later than 30 days after the issuance of the arbitrator's decision, counsel **SHALL** file a joint status report; and

4. The Court hereby retains jurisdiction to confirm the arbitration award and enter judgment for the purpose of enforcement.

IT IS SO ORDERED.

Dated:   **March 24, 2014**                    **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE

---

[6] The FAA provides, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C § 3.